STATE of Missouri, Respondent,

v.

Everett ROSE, Appellant.

No. 49209.

Supreme Court of Missouri,

Division No. 2.

April 8, 1963.

———◇———

Errol Joyce, Brookfield, and Jack C. Jones, Carrollton, for appellant.

Thomas F. Eagleton, Atty. Gen., Robert E. Hogan, Special Asst. Atty. Gen., Jefferson City, for respondent.

LEEDY, Judge.

Everett Rose was charged in the Lafayette Circuit Court with the offense of operating a motor vehicle while in an intoxicated condition, a felony under § 564.440, RSMo 1959, V.A.M.S. The case went on change of venue to Clay County where he was convicted and his punishment fixed by the verdict at imprisonment in the county jail for a term of one year. Judgment was entered and sentence pronounced in accordance with the verdict, and after an unavailing motion for a new trial defendant appealed. The case is before us on the transcript on appeal and the state's brief, no brief having been filed on behalf of defendant. The motion for new trial contains only two assignments of error, one of which challenges the sufficiency of the evidence to support the verdict.

It is uncontroverted that shortly after 7 o'clock p. m., on Sunday, November 16, 1958, at a point between Dover and Lexington on U. S. Highway 24 in Lafayette County, a head-on collision occurred between a westbound 1955 Plymouth sedan and an eastbound 1951 Dodge, in which collision both drivers were injured, one (the Dodge) fatally. It was dark and a light rain was falling ("enough to make you use your windshield wipers," as put by one witness). Defendant took the stand and admitted that he was one of the two occupants of the Plymouth, but he denied that he was driving, or that he was in an intoxicated condition at and immediately prior to the time of the collision.

The testimony of John Kopp, the state's only eyewitness to the collision, may be summarized as follows: That about 7 o'clock on the evening in question, as he was driving west on U. S. Highway 24, he "came up behind" the 1955 Plymouth at a point about two miles east of Dover, and followed it closely, traveling at the rate of 60 or 65 miles per hour (except when passing through Dover) until the time of the collision; there was nothing ahead except that one car, the Plymouth, and it was continuously weaving back and forth across the road, making it impossible for him to pass; he observed a man and a woman in the car, and the man was driving; he followed the car approximately four miles, all the while

conscious of the fact that it was the man who was driving; that as the car he was following was going down a slight grade, another car was coming from the opposite direction (eastbound), and as the two cars approached each other, the Plymouth "weaved to the left of the highway and was right in the center of the highway and struck head on this other car * * * I seen they were going to hit and applied my brakes." They hit, and when they did so, their lights went out, and the cars "flew back apart and a car went to the ditch on each side"; the witness then "drove past, right in between them, pulled off on the shoulder, stopped and run back," flashlight in hand, to the first car (the Plymouth), opened the door on the right side and inquired if they were "injured bad"; both were sitting up, talking; the woman was sitting on the right side (later she got out, but not then), and the man was "sitting under the steering wheel, behind the steering wheel on the left-hand side"; the back end of the car was in the ditch. When the witness offered assistance, defendant asked if he (witness) would help him (defendant) get his car out of the ditch before the police got there; he did not "necessarily smell" the defendant's breath or the woman's breath, but "the car smelled awful strong of liquor" when he opened the door; he noticed there was a large liquor bottle (a 5th) and several 7-Up bottles lying on the floor behind the front seat, as well as some beer cans in a sack. He described defendant's voice and speech as being "thick and heavy like he couldn't hardly talk," and further gave it as his opinion (after being duly qualified so to do) that defendant was drunk.

A highway patrolman (Trooper Wright), who had been nearby, arrived at the scene a matter of minutes after the collision. He did not talk to defendant there, but he did interview and question him (with and in the presence of the Sheriff) at about 8:30 that evening in the hall of the hospital in Lexington. The trooper testified defendant there stated that he was driving the car at the time of the accident, that his wife was with him, and that he was the owner of the car. The trooper further testified there was a "heavy odor" of alcohol on defendant's breath; that he was "very bleary-eyed and his speech was hardly understandable," and that, in his opinion, defendant was intoxicated. The testimony of the Sheriff was to the same effect. The Sheriff, who had known defendant "quite a while," gave it as his opinion that defendant "was certainly intoxicated."

By his own admission, and hers as well, defendant's woman companion on the occasion in question was his paramour with whom he had been carrying on an illicit relationship for a considerable time. In any event, he was the only witness called in his own behalf. In brief, his defense was, as previously indicated, that he was neither the driver of the car, nor intoxicated. He testified that his companion had taken over the wheel at Waverly on their return trip from Carrollton to Kansas City on the Sunday afternoon in question, and that he was riding in the car as a passenger, and not as the operator. He detailed their movements during the whole of the afternoon after leaving the Cozy Court Motel near Kansas City on Highway 40 at 2 p. m., but for present purposes a review of that portion of the evidence is not indicated. He denied having had any intoxicants other than a bottle of beer at Lexington, and "swallow" of a gin drink which had been mixed in the car by his companion and served enroute to Carrollton, and two beers apiece at Carrollton.

In rebuttal, the state called the woman and she testified directly and positively to the fact (among other things) that defendant was the driver. She admitted there was a bottle of gin in the car, and that they drank two beers apiece during the course of their afternoon jaunt. She did not recall being close enough to him to smell defendant's breath, but that they drank nothing else in the car on the return trip. She attributed the accident to a heavy rainstorm

which she said they encountered after leaving Dover; that they were going "real slow, I would say thirty-five miles an hour, so we were just crawling," and that she was directing him as to how far he was from the shoulder ("You're a foot from the shoulder, you're two foot, you're doing all right") when "all at once was this impact."

■ Enough has been set forth to demonstrate there was abundant substantial evidence which would have warranted the jury in finding defendant guilty of the offense charged, so defendant's assignment that the evidence is insufficient to support the verdict must be, and it is, disallowed.

■ The only other assignment of error in the motion for new trial complains of the admission of "evidence and testimony offered by the state treating of a test of defendant's blood for alcoholic content and the opinion of the chemist based upon such test that defendant was under the influence of alcohol and in an intoxicated condition at the time of the accident." The reasons assigned in this connection were: (1) That the evidence showed the taking of the blood to have been without defendant's permission or authority; (2) there was no proof or competent evidence of continuous possession and control of the receptacle containing the blood sample; (3) there was no legal and competent evidence identifying the receptacle as containing defendant's blood; and (4) there was no fact foundation laid to support the opinion by the chemist

There was evidence to the effect that such a test had been made at the technical laboratory of the State Highway Patrol in Jefferson City on November 18, the chemist who made the test having been called as a witness for the state and so testified. The defendant strenuously objected to different portions of the chemist's testimony and, in fact, on the various grounds above noted, sought to exclude all evidence in relation

to the test. The court sustained many of the objections, and overruled others, some of which were heard and ruled out of the presence of the jury. The record hardly supports the charge that the chemist was permitted to state his opinion, based on the test, that the defendant was under the influence of alcohol and in an intoxicated condition at the time of the accident; but even if it did, and without pausing to inquire into the merits of the question which would be posed thereby, the assignment completely ignores the ultimate ruling of the court in excluding all of the testimony in relation to the blood test, as disclosed by the following excerpts from the record:

"THE COURT: The motion to strike the testimony in regard the blood test is sustained.

"MR. JOYCE: And the jury instructed not to consider it.

"THE COURT: The jury will not consider the evidence in regard to the, that's been offered in regard to the blood test."

Immediately following this ruling, the defendant moved the court to discharge the jury, which motion was overruled. The rulings on both the motion to strike and the the motion to discharge the jury were discretionary matters, and, of course, reviewable for abuse. But no abuse has been charged in either instance. Indeed, the motion for new trial does not complain of the ruling on the motion to discharge, so there is nothing to review in that connection.

We have examined those portions of the record which it is our duty to examine under Rule 28.02, V.A.M.R., whether error has been assigned thereon or not, and find no reversible error therein.

The judgment should be, and it is, affirmed.

All of the judges concur.